UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LINDA M. KERPER and WAYNE KERPER (w/h), | : | Hon. Joseph H. Rodriguez |
| Plaintiffs, | : | Civil Action No. 13-3288 |
| v. | : | MEMORANDUM OPINION & ORDER |
| SARAH L. CHILSON, | : | |
| Defendant. | : | |

This matter is before the Court on Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [Doc. 27]. The Court reviewed the submissions of the parties and has decided the motion on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion will be denied.

Background

This matter arises out of a May 27, 2011 motor vehicle accident in Wildwood, New Jersey. Plaintiff Linda M. Kerper filed a claim for negligence by Defendant Sarah L. Chilson, invoking diversity of citizenship as the basis for this Court's jurisdiction. Plaintiff claims that as a result of Defendant's negligence,

> Plaintiff, Linda M. Kerper, sustained serious and permanent injuries to her right foot, right knee, back, right hip, right hand and pelvis, including but not limited to lumbar strain and sprain, thoracic sprain and strain, cervical strain and sprain,

1

>right ankle sprain and strain, right foot sprain and strain with plantar fasciitis, right hand sprain and strain, right wrist sprain and strain, right wrist nondisplaced hairline fracture of the right navicular waist, lumbar radiculitis, cervicalgia, lumbalgia, cervical herniated discs, thoracic herniated discs, aggravation of disc degeneration of the lumbar spine and spinal stenosis, aggravation of degenerative disc at L3-4 and stenosis at L4-5 and other injuries.

(Compl., ¶ 12.)

On the date of the accident, Plaintiff did not reside in New Jersey but maintained an automobile insurance policy with Travelers Insurance Company, an insurance company authorized to conduct business in the State of New Jersey. Accordingly, Plaintiff is subject to New Jersey's "Deemer Statute"[1] and the "limitation-on-lawsuit threshold" set forth in the New Jersey Automobile Insurance Cost Reduction Act ("AICRA").[2]

---

[1] The Deemer Statute, N.J. Stat. Ann. § 17:28–1.4, "requires insurers authorized to transact automobile insurance business in New Jersey to provide coverage to out-of-state residents consistent with New Jersey law 'whenever the automobile or motor vehicle insured under the policy is used or operated in this State.'" Zabilowicz v. Kelsey, 984 A.2d 872, 875–876 (N.J. 2009). The Deemer Statute also requires affected insurance companies "to provide personal injury protection [("PIP")] benefits pursuant to N.J. Stat. Ann. [§ ] 39:6A–4." Id. at 876. "In short, the Deemer Statute furnishes the covered out-of-state driver with New Jersey's statutory no-fault PIP and other benefits and, in exchange, deems that driver to have selected the limitation-on-lawsuit option of [N.J. Stat. Ann. §] 39:6A–8(a)." Id.

[2] AICRA represents an effort by the New Jersey's Legislature to curb rising auto insurance costs by limiting the opportunities for accident victims to sue for noneconomic damages. This effort began with New Jersey's implementation of a no-fault insurance scheme in 1972 when New Jersey

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted if "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Allegheny Pa., 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 252.

---

passed the New Jersey Automobile Reparation Act and has since undergone numerous revisions, in a process described as "tortured," which need not be recounted here. See, e.g., Branca v. Matthews, 317 F. Supp. 2d 533, 537-39 (D.N.J. 2004). The New Jersey Legislature passed AICRA in 1998 with three distinct goals "containing [insurance premium] costs, rooting out fraud within the system, and ensuring a fair rate of return for insurers." DiProspero v. Penn, 874 A.2d 1039, 1046 (N.J. 2005).

The nonmoving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 319 (3d Cir. 2005). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (internal citations omitted). The court's role in deciding the merits of a summary judgment motion is to determine whether there is a genuine issue for trial, not to determine the credibility of the evidence or the truth of the matter. <u>Id.</u> at 249.

<u>Analysis</u>

To contain automobile insurance costs, AICRA established the limitation-on-lawsuit threshold, which "bars recovery for pain and suffering unless the plaintiff suffers an injury that results in (1) death; (2) dismemberment; (3) significant disfigurement or significant scarring; (4) displaced fractures; (5) loss of fetus; or (6) permanent injury within a reasonable degree of medical probability . . . ." <u>DiProspero v. Penn</u>, 874 A.2d 1039, 1046 (N.J. 2005) (quoting N.J. Stat. Ann. § 39:6A–8(a)) (internal quotation marks omitted). An insured bound by the limitation-on-lawsuit threshold is barred from suing for noneconomic damages unless her injuries fall within AICRA's six categories. <u>Johnson v. Scaccetti</u>, 927 A.2d 1269, 1273 (N.J. 2007). In the summary judgment context, a plaintiff

4

can proceed to trial if she demonstrates that her alleged injuries, if proven, fall into one of the six threshold categories. Davidson v. Slater, 914 A.2d 282, 295 (2007) (citing Oswin v. Shaw, 609 A.2d 415, 417 (N.J. 1992)).

If the alleged injury does not fit one of the obvious types of injury specified in the statute (death, dismemberment, displaced fractures, or loss of fetus), a plaintiff must also prove that the alleged statutory injury was caused by the accident in question or "risk dismissal on summary judgment if the defendant can show that no reasonable fact-finder could conclude that the defendant's negligence caused plaintiff's alleged . . . injury." Id. However, where a plaintiff alleges she suffered more than one injury as a result of the accident in question, the plaintiff need only establish one of her injuries meets the limitation-on-lawsuit threshold for the jury to consider all of the injuries when calculating noneconomic damages. Johnson, 927 A.2d at 1282.

AICRA defines "permanent injury" as "[w]hen the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment." N.J. Stat. Ann. § 39:6A–8(a). Additionally, in adopting AICRA, the New Jersey Legislature explicitly adopted a threshold requirement, the objective medical evidence standard, established by the New Jersey Supreme Court in Oswin v. Shaw, 609 A.2d

415 (N.J. 1992). <u>DiProspero v. Penn</u>, 874 A.2d 1039, 1050 (N.J. 2005). A plaintiff's alleged limitation-on-lawsuit injury "must be based on and refer to objective medical evidence." <u>Id.</u> (emphasis removed).

Finally,

> When a plaintiff alleges aggravation of pre-existing injuries as the animating theory for the claim, the plaintiff must produce comparative evidence to move forward with the causation element of that tort action. When a plaintiff does not plead aggravation of preexisting injuries, a comparative analysis is not required to make that demonstration. AICRA does not impose on plaintiff any special requirement for a comparative-medical analysis in respect of causation in order to vault the verbal threshold.

<u>Davidson v. Slater</u>, 914 A.2d 282, 284 (N.J. 2007).

In moving for summary judgment, Defendant argues, first, that Plaintiff has no credible, objective medical evidence of permanent injury resulting from the May 27, 2011 accident to overcome the verbal threshold. Defendant also argues that the Court should grant her summary judgment because Plaintiff has not presented an adequate comparative analysis for any aggravated permanent injuries to overcome the verbal threshold.

Plaintiff argues that in her Amended Complaint, she pled that she suffered both aggravated and new permanent injuries that independently meet the verbal threshold. Again, Plaintiff alleged that she:

> sustained serious and permanent injuries to her right foot, right knee, back, right hip, right hand and pelvis, including but not limited to lumbar strain and sprain, thoracic sprain and strain,

> cervical strain and sprain, right ankle sprain and strain, right foot sprain and strain with plantar fasciitis, right hand sprain and strain, right wrist sprain and strain, right wrist nondisplaced hairline fracture of the right navicular waist, lumbar radiculitis, cervicalgia, lumbalgia, cervical herniated discs, thoracic herniated discs, aggravation of disc degeneration of the lumbar spine and spinal stenosis, aggravation of degenerative disc at L3-4 and stenosis at L4-5 and other injuries.

(Compl., ¶ 12.)  She continues that "[f]or the first time in Plaintiff's life on June 14, 2011, after continuous complaints of lower back pain radiating into her thighs since the accident in May 2011, an MRI ordered by Dr. Joseph Kipp revealed a 'broad-based disk bulge with severe bilateral facet arthropathy at L5-S1.'"  Pl. Br., p. 9, citing Tango Cert., Ex. Y.  Indeed, the Court finds that this disk bulge did not appear in the February 15, 2011 MRI of the lumbar spine.  See Tango Cert., Ex. R.  Rather, as to L5-S1, the February 15, 2011 MRI indicates "there is no posterior disc contour abnormality," "[t]he central canal is patent," "[t]he neutral foramina are patent bilaterally," and "[t]here is moderate facet hypertrophy."  Id.  Plaintiff's March 11, 2011 MRI was only on the cervical and thoracic spine.  Tango Cert., Ex. T.  The Court cannot find, as a matter of law, that the disk bulge at L5-S1 on June 14, 2011 could not have reflected a new injury as the result of the trauma of the May 27, 2011 accident.

Additionally, in his July 21, 2014 Report, Dr. Joseph Kipp discusses the permanency of this injury and details the various complaints and instances in Plaintiff's medical records where she was found to have significant lower back pain radiating into her thighs and/or lower extremities.  See Tango Cert., Ex. V.[3]  This is credible, objective evidence of a new permanent injury sufficient to meet the verbal threshold and overcome the instant motion for summary judgment.

Further, Dr. Kipp's report provides sufficient analysis of Plaintiff's pre-existing injuries from prior motor vehicle accidents as compared to the instant action.  Kipp states that Plaintiff had sustained injuries in a prior motor vehicle accident to her lower back, thoracic pain, and right carpal tunnel syndrome.  See Tango Cert., Ex. V.  He points out that as of April 20,

---

[3] Specifically, Dr. Kipp mentions and relies upon Plaintiff's urgent visit to Dr. Robert Simcsak, D.C., on August 1, 2011, approximately two months after the accident.  At that visit, Dr. Simcsak found that the "lumbosacral spine revealed paravertebral tenderness" and there was "pain upon end play at L5-S1 and the right S1 joint."  Sciolla Cert., Ex. E.  Additionally, Dr. Kipp relied upon Plaintiff's visit to Dr. James Zaslavsky, D.O. on August 15, 2012. At that visit, Dr. Zaslavsky noted that "[Plaintiff's] acute injury for which she seeks treatment for today is a new radicular pain that she is getting into her right lower extremity that emanates from her right PSIS region."  Tango Cert., Ex BB.  Dr. Kipp's Report reflected that Plaintiff sought treatment from Zaslavsky for right lower extremity radicular pain that was "new since this accident." Tango Cert., Ex. V.  He concluded that "within a reasonable degree of medical certainty," "[a]s a result of her motor vehicle accident of May, 2011," Plaintiff would "require chronic medical management" indefinitely. Tango Cert., Ex. V.

2011, Plaintiff's preexisting injuries were steadily improving with therapy and goes on to explain that, as of June 9, 2011, Plaintiff was still complaining of ongoing thoracic level pain from her thoracic disc herniation that had been "exacerbated since this accident." Id.[4]

Therefore, Dr. Kipp has provided a sufficient comparative analysis of Plaintiff's aggravated injuries to meet the verbal threshold in this case. His conclusions are to a reasonable degree of medical certainty and are based on his first hand treatment and evaluation of Plaintiff from both before and after the May 27, 2011 accident.

## Conclusion

For these reasons,

IT IS ORDERED this 22nd day of March, 2016 that Defendant's motion for summary judgment [Doc. 27] is hereby DENIED.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.

---

[4] Although Dr. Kipp admits that Plaintiff's most recent MRI did not show appreciable internal changes to her previous injuries to the C5-6, C6-7, T5-6, T6-7, L3-4, and L4-5 regions, documented in her February 2011 MRI, he contends that the level of pain to the cervical, thoracic, and lumbar regions where Plaintiff had previous injuries was beyond the pain she had experienced prior to the May 27, 2011 accident. See Tango Cert., Ex. V. Kipp found that her pain in these regions was not well controlled, only temporarily relieved by epidural injections, and is evidence of chronic pain syndrome, in contrast to the progress that Plaintiff was experiencing related to pain in these regions prior to the May 27, 2011 accident. Id.